# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

MARI A. SOLIVAIS,

      Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

      Defendant.

Case No. 2:14-cv-68-JVB

## OPINION AND ORDER

Plaintiff Mari A. Solivais seeks judicial review of Defendant's decision to deny her social security disability benefits. An Administrative Law Judge heard the case on remand from the Appeals Council. (R. 19.) He issued a decision unfavorable to Plaintiff on October 12, 2012. (R. 35.) That decision became the final decision of Defendant Commissioner of Social Security when the Social Security Appeals Council denied Plaintiff's request for review on January 10, 2014. (Pl. Opening Br. 2.)

**A.**    **Overview of the Case**

Plaintiff alleges disability since June 30, 2006. (R. 19.) She was 46 years old at the time of the hearing (R. 100.) She had not finished high school due to a motorcycle accident in 1982. (R. 102; Pl. Opening Br. 2.) The ALJ found Plaintiff has five severe impairments: a history of recurrent hernias, multiple operations with complications, borderline intellectual functioning,

depression, and obesity. (R. 22.) He found her degenerative disc disease to be non-severe. (R. 22.)

The ALJ found that Plaintiff does not meet or medically equal any listing, particularly considering digestive and mental disorder impairment listings. (R. 22.) In relevant part, he found that Plaintiff's obesity does not further limit her condition. (R. 22.) Additionally, he found that she does not meet Listings 12.02 – Organic Mental Disorder, 12.04 – Affective Disorders, and 12.05 – Borderline Intellectual Functioning. (R. 23.) In making these determinations, the ALJ found that Plaintiff does not meet "paragraph B" criteria because she has a moderate restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. (R. 23 — 24.) He also found that Plaintiff's borderline intellectual functioning and depression does not meet "paragraph C" criteria. (R. 24.) Relating to Listing 12.05 – Borderline Intellectual Functioning, the ALJ found no adaptive defects during the development period (before age 22) required for the listing. (R. 25.) The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work with certain additional limitations. (R. 25.) Further, he found that Plaintiff is unable to perform past relevant work (R. 33) but is able to perform jobs that exist in significant numbers in the national economy. (R. 34.) He therefore found that Plaintiff is not disabled. (R. 35.)

**B.      Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

## C. Disability Standard

To qualify for disability benefits, the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant

3

is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.     Analysis**

**(1)     *The ALJ improperly evaluated opinion evidence.***

Plaintiff contends that the ALJ did not follow social security regulations in evaluating the medical opinion evidence, specifically that of Julian Freeman, M.D. Chapter 20 C.F.R. § 404.1527(c) states that, "[W]e will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." These factors are: examining relationship between source and claimant, treatment relationship between source and claimant, supportability of opinion by relevant evidence, consistency of opinion with record as a whole, specialization of source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1-6). In his opinion, the ALJ only identified the weight he gave to one treating source, and that was the initial assessment performed by Porter County Family Counseling. The ALJ gave the diagnoses from this source "weight to the extent that they are consistent with the residual functional capacity." (R. 27.) Because he gave no treating source controlling weight, he must analyze all the medical opinion sources according to the 20 C.F.R. § 40.1527(c) factors.

The ALJ gave great weight to three state agency *psychiatric* consultants: B. Randal Horton, Psy.D.; Kenneth Neville, Ph.D.; and Maura Clark, Ph.D. (R.30.) He then gave little weight to all of the state agency *medical* consultants — M. Brill, M.D.; R. Fife, M.D.; and J.

4

Sands, M.D. — because they did not have the opportunity to review updated medical records. (R. 31.) All of these consultants were non-treating sources. (R.30.) Nor did the ALJ give any weight to the medical consultant hired by Plaintiff, Julian Freeman, M.D. (R. 32, R. 2283.) Plaintiff argues that ignoring Dr. Freeman's opinions was a reversible error.

The ALJ must evaluate Dr. Freeman's medical opinions using the factors in 20 C.F.R. § 40.1527(c). The first relevant factor is "supportability." Opinions that present more medical evidence, findings, and explanations will get more weight. 20 C.F.R. § 40.1527(c)(3). The next relevant factor is "consistency." Opinions that are more consistent with the record as a whole will be given more weight. 20 C.F.R. § 40.1527(c)(4). The third relevant factor is "specialization." Opinions of specialists in their field of specialty are generally given more weight than opinions of a non-specialist. 20 C.F.R. § 40.1527(c)(5). Finally, other factors, such as familiarity with social security disability programs and evidentiary requirements or familiarity with other information in the case record, are considered that may tend to support or contradict an opinion. 20 C.F.R. § 40.1527(c)(6).

Dr. Freeman is an internal medicine and neurology specialist. (R. 31.) He also worked for the Social Security Administration as a medical consultant for eight years and a medical advisor for eleven years. (Pl.'s Opening Br. 21.) Dr. Freeman has experience and training in internal medicine; neurologic, nerve conduction and EMG studies; and the assessment of disorders with mixed neurologic and psychiatric manifestations. (R. 2284.) He received training in all of those areas at the Mayo Clinic, which included residency training in psychiatry, and neurologic practice. (R. 2284.) This included treating over 4000 individuals with psychiatric signs or symptoms. (R. 2284.) Dr. Freeman also worked for the Department of Defense, evaluating effects of physical illness on human function. (R. 2284.) This work also included developing

methods for prediction of human capabilities and limitations in real-live work situations with over 99% accuracy. (R. 2284.) Additionally, the Social Security Administration has called Dr. Freeman to testify as an "impartial medical expert" in at least 18 cases. (Pl.'s Reply Br. 2 – 3.)

Dr. Freeman wrote an in-depth report analyzing Plaintiff's medical impairments. (R. 2284.) He first provides a summary of relevant medical information from the record, including results of objective testing and evaluations by treating physicians. He next makes diagnoses based on that evidence. The first diagnosis is "abdominal wall injury requiring repeated staged reconstructive surgery." (R. 2286.) To support his diagnosis, he cited to conclusions of treating physicians, treatment records, and results of objective testing. (R. 2286-287.) His next diagnosis is brain scarring and chronic organic brain damage resulting from the head trauma Plaintiff sustained during the motorcycle accident. (R. 2287.) To support this diagnosis, Dr. Freeman cited to and analyzed CT and MRI studies. (R. 2287.) Next, he diagnosed severe agitated depression based on the MMPI testing and exam records. (R. 2287.) His final diagnosis was the presence of an underlying poorly defined or undifferentiated connective tissue disease based on short PTT, a positive ANA with speckled pattern, a cyst infected with pseudomonas, dysesthetic burning leg pain, normal NCV and EMG studies but with positive HLA-B27 antigen, and mild diabetes indicated by fasting sugars at the 120 range. (R. 2287.) After his medical diagnoses, Dr. Freeman found Plaintiff to meet listings 1.08, 12.02, and 14.06A, citing to record evidence to support each conclusion. (R. 2287-288.) He then gave a further functional capacity assessment reasoned from the medical evidence. (R. 2288.) Finally, he addressed possible concerns with the traumatic brain injury and connective tissue disease findings with reasoning based on his experience in those fields. (R. 2289.)

Despite Dr. Freeman's detailed analysis, which cited to medical evidence in the record, (R. 2287 – 288), the ALJ completely rejected his opinions for three main reasons. (R. 32.) First, the ALJ noted that Dr. Freeman is not a treating physician, which suggests that he is not completely familiar with Plaintiff's impairments. (R. 32.) This logic is inconsistent with his earlier determination giving great weight to three non-treating state agency psychiatric consultants. (R. 30.) If being a non-treating source was enough to reject consulting opinions, no consulting opinions would ever be given weight. The ALJ cites to no reason why being a non-treating source in this particular instance made Dr. Freeman less familiar with Plaintiff's impairments than the other non-treating sources to whose opinions he gave great weight.

Second, the ALJ rejected Dr. Freeman's opinions because he claims they are not supported by objective evidence. (R. 32.) He further notes that no treating physician has concluded that Plaintiff met a listing. (R. 32.) This reasoning is also flawed because, as far as the Court can tell, no treating physician has ever said Plaintiff didn't meet a listing either. In fact, the Court can find no evidence in the record that treating physicians were ever asked if Plaintiff met a listing. When C.J. Yoon, M.D., a treating physician, opined that Plaintiff should be 'off work' the ALJ dismissed this opinion as conclusory. (R. 32.) This may be true, but one cannot expect treating physicians to make listing determinations without prompting in one case and discredit their opinions on a plaintiff's ability to work in the next. While opinions regarding disability are reserved to the Commissioner under SSR 96-5p, a treating physician's medical opinion that Plaintiff should not work undermines the prudence of inferring Plaintiff did not meet a listing because a treating source never said she did.

Generally, listing evaluation is left to medical and psychological consultants who are familiar with the Social Security regulations. Here, the ALJ interprets treating physicians'

7

records without the aid of any medical consultants, state agency or otherwise, because he has not afforded any of them great weight. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Further, the ALJ does not explain how Dr. Freeman's opinion is inconsistent with medical evidence. If the ALJ was concerned about the medical support for Dr. Freeman's opinion, he should have solicited additional evidence to properly explain why the opinion was not supported by the medical record. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." (citing 20 C.F.R. § 404.1527(c)(3))). A broad statement that an opinion is merely inconsistent does not enable the court to see how the ALJ reached that conclusion and review its accuracy.

Third, the ALJ reasoned that Dr. Freeman's opinions are questionable because he relied upon a diagnosis of connective tissue disease, and the ALJ has determined that that diagnosis is not supported by the records from treating physicians. (R. 32.) Again, the ALJ interpreted complicated medical records from treating physicians without the guidance of a medical consultant. Connective tissue disease is not a psychiatric issue, so the state agency psychiatric consultants would not be qualified to opine on this issue. Without giving great weight to any medical consultants, the ALJ is left to interpret treating records by himself and does not specifically say why a diagnosis of connective tissue disease is not supported by the record.

In deploying faulty reasoning and conclusory statements in his assessment of medical opinions, the ALJ has failed to "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The Court remands this case for the ALJ to reconsider the weight he will give to Dr. Freeman's testimony in further detail.

**(2)** *The ALJ improperly evaluated whether Plaintiff met or equaled a Listing*

Plaintiff claims that the ALJ's listing determination is not supported by substantial evidence. While much of this analysis may rest on the weight given to Dr. Freeman's opinion, the Court will address the adequacy of the analysis the ALJ provided for each listing. To be found disabled, a plaintiff must demonstrate that she has an impairment that meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. When making this determination, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Additionally, "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Id.* at 669; 20 C.F.R. § 404.1527(c)(3). Moreover, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670.

Plaintiff challenges specifically the evaluations of listings 1.08, 12.02, and 14.06A, the listings that Dr. Freeman concluded that Plaintiff met. (R. 2287 – 288.) First, although mentioned while supporting his weight determination of Dr. Freeman's opinions in the RFC analysis, the ALJ failed to discuss listings 1.08 and 14.06 by name during his listing determination and failed to adequately analyze these listings. This must be corrected upon remand. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). In determining "paragraph B" criteria relevant to Listing 12.02, the ALJ found that Plaintiff had no episodes of decompensation, each of extended duration. (R. 24.) He reasons that this is the case because there is no record of a psychiatric institution admitting Plaintiff for an extended period of time. (R. 24.) This reasoning is flawed because it uses lack of treatment as evidence of lack of symptoms. An ALJ may not draw

9

inferences about Plaintiff's condition from lack of treatment unless the ALJ has explored Plaintiff's explanations for this deficiency. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Also, the ALJ notes that Plaintiff has little difficulty in her daily activities because she can perform actions like dressing and bathing herself, but he omits that she does not handle her own bills and only travels with others. (R. 24, R. 70.) While the ALJ mentions that claimant testified to these restrictions, his credibility determination does not clearly articulate whether or not he credited them. He merely mentions that Plaintiff is "less than fully credible" and that her alleged limitation in daily activities was exaggerated. (R. 29 – 30.) The ALJ should be more specific on this account so that the Court may accurately determine if enough evidence supports his conclusions.

**(3)** *RFC evidence*

While the Court remands on issues that have direct bearing upon the sufficiency of evidence supporting the RFC, it still reviews issues that may have a dispositive effect upon the sufficiency of evidence regardless of the remand result of the other issues. When discussing Plaintiff's credibility, the ALJ finds her not credible in part because she claims she cannot lift a gallon of milk while her post-surgical instructions reference not lifting more than 10 pounds. (R. 29.) This is not a logical reason for discrediting her. Similar to a warning not to operate heavy machinery while taking a medication written on a prescription given to a child that could not operate heavy machinery anyway, a surgical instruction about not lifting more than 10 pounds because of the surgery should not be taken to preclude the possibility that Plaintiff was not able to lift 10 pounds even before her surgery. The ALJ's RFC also suffers from the same decompensation analysis flaw as his listing analysis does, which uses lack of treatment as an

indication of level of symptoms without further explanation. (R. 30.) He not only uses this logic to determine lack of decompensation, but also to determine that Plaintiff's depression was inconsistent with the severity of her allegations because she sought little treatment for it. (R. 30.) The ALJ needs to further explore these points on remand.

**E.      Conclusion**

Because the ALJ improperly evaluated opinion evidence, the Commissioner's decision is REMANDED for further consideration consistent with this opinion.

SO ORDERED on July 30, 2015.

                                              s/ Joseph S. Van Bokkelen
                                              JOSEPH S. VAN BOKKELEN
                                              UNITED STATES DISTRICT JUDGE